UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-11038-RGS

SERGIO GROBLER

v.

NEOVASC INC. ET AL.

MEMORANDUM AND ORDER
ON DEFENDANTS' MOTION TO DISMISS

November 22, 2016

STEARNS, D.J.

Plaintiff Sergio Grobler purchased shares in defendant Neovasc Inc., a company controlled by defendants Alexei Marko (as chief executive officer) and Christopher Clark (as chief financial officer).  When Neovasc was hit with a $70 million jury verdict after being accused of theft of intellectual property, Grobler brought suit, claiming that defendants had misled investors about the likely outcome of the case.  Grobler also sought to represent a class of similarly situated purchasers.  Defendants have moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

BACKGROUND

The facts taken from Grobler's Complaint are assumed to be true for purposes of this motion.  Neovasc is a Canadian medical device company that develops and manufactures cardiovascular products.  In 2009, Neovasc solicited business from another medical device company, CardiAQ Valve Technologies, Inc.  That summer, the two companies entered into an agreement under which Neovasc provided manufacturing services for CardiAQ.  During the course of the relationship, CardiAQ disclosed proprietary information about its transcatheter mitral valve implantation technology.  In February of 2010, CardiAQ relocated its headquarters to California and informed Neovasc that it would soon no longer require an outside manufacturer for its products.  Shortly thereafter, in May of 2010, Neovasc filed a patent application disclosing transcatheter mitral valve implantation technology, listing Neovasc employees as the sole inventors. That patent, No. 8,579,964, was granted by the Patent and Trademark Office in November of 2013.  Neovasc exploited the technology to develop its own transcatheter mitral valve device, marketed as the "Tiara."

Believing that Neovasc had appropriated its proprietary technology, CardiAQ brought suit against Neovasc in June of 2014 in the District of Massachusetts.  CardiAQ asserted a variety of claims, including breach of a

nondisclosure agreement, breach of the implied covenant of good faith and fair dealing, fraud, unfair and deceptive trade practices under Mass. Gen. Laws ch. 93A, § 11, and misappropriation of trade secrets. CardiAQ also sought a correction of inventorship on the '964 patent under 35 U.S.C. § 256. Although summary judgment was granted by the district court to Neovasc on the fraud count, the other claims went to trial. On May 19, 2016, the jury found that Neovasc had breached the nondisclosure agreement and the correlative duty of honest performance, but awarded no damages. The jury returned a split verdict on the trade secrets counts, concluding that Neovasc had misappropriated three trade secrets, but had not stolen the other three. It then awarded $70 million in damages to CardiAQ. The jury also found for CardiAQ on the Chapter 93A claim and the correction of inventorship claim (the district court subsequently granted Neovasc judgment as a matter of law on the Chapter 93A claim). Neovasc's stock price fell from $1.84 to $0.46 per share immediately after the verdict was announced.

Grobler filed this putative class action on June 6, 2016. He seeks to represent a class of plaintiffs who purchased shares in Neovasc between January 26, 2015 (when Neovasc made a public offering of eight million shares) and the date of the jury verdict, May 19, 2016. Grobler alleges that Neovasc's stock price was artificially inflated by statements related to the

CardiAQ litigation made by defendants in various Securities and Exchange Commission (SEC) filings and on an earnings call. Specifically, he singles out statements made in a supplemental prospectus to the January 2015 offering, which disclosed the CardiAQ theft-of-secrets lawsuit and stated that "we believe this allegation to be without merit." Defs.' Ex. 1 at 8. The "without merit" language was repeated in multiple other SEC filings prior to the verdict. Grobler also points to a statement made by defendant Marko on an earnings call on March 29, 2016, during which he told his interlocutors that the lawsuit was "baseless" and that CardiAQ's claims had "no merit whatsoever." Defs.' Ex. 17 at 15. In addition, Grobler asserts that various statements made in press releases and other public documents regarding the development of the Tiara device were misleading because they did not disclose that the company's prospects for future success were based on a larceny.

Relying on the statements belittling the merits of CardiAQ's lawsuit and the adverse jury verdict, Grobler asserts claims under (1) section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 under that statute; and (2) section 20a of the Act. The court heard oral argument on the motion to dismiss on October 26, 2016. Following the oral argument, the judge overseeing the CardiAQ litigation granted enhanced damages to CardiAQ on

its trade secrets claims, finding that "Neovasc's misappropriation was willful." *CardiAQ Valve Techs., Inc. v. Neovasc Inc.*, No. 14-cv-12405-ADB, 2016 WL 6465411, at *6 (D. Mass. Oct. 31, 2016).   The judge awarded CardiAQ an additional $21 million in damages as a result.  *Id.* at *7.

## DISCUSSION

In order to state a claim under section 10(b) and its corresponding rule, Grobler must allege "(1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Miss. Pub. Emps.' Ret. Sys. v. Boston Sci. Corp.*, 523 F.3d 75, 85 (1st Cir. 2008).   The Private Securities Litigation Reform Act of 1995 (PSLRA) governs the pleading standards in securities fraud cases.   Under these standards, a plaintiff must specify each statement or omission which is allegedly misleading, explain why each statement or omission is misleading, and provide factual support for any allegations of fraud.  *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193-194 (1st Cir. 1999).

Although defendants contend that Grobler's Complaint fails to satisfy several of these elements, their chief argument is that the challenged statements are forward-looking, and thus fall within the "safe harbor" created by the PSLRA.  15 U.S.C. § 78u-5(c).  Under the safe harbor provision,

a party is immunized for otherwise materially misleading statements or omissions by satisfying either of two tests. The first, relied on by defendants, creates "a surprising rule that the maker of knowingly false and wilfully fraudulent forward-looking statements, designed to deceive investors, escapes liability for the fraud if the statement is 'identified as a forward-looking statement and [was] accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.'" *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 212 (1st Cir. 2005) (quoting 15 U.S.C. § 78u-5(c)(1)(A)(i)).

To determine whether a statement is sheltered by the safe harbor provision, "the aspect of the statement that is based on the present fact must be distinguished from the aspect of the statement that is a future projection." *N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35, 45 n.13 (1st Cir. 2008). Only those portions of a statement which are truly forward-looking find secure berths within the safe harbor; assertions "whose falsity consists of a lie about a present fact" are denied entrance. *Stone & Webster*, 414 F.3d at 213.

Neovasc's and Marko's statements were undoubtedly forward-looking. It is an accepted truism that statements are forward-looking if their

"accuracy can only be verified after they are made." *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 569 (S.D.N.Y. 2011); *see also Stone & Webster*, 414 F.3d at 212 (the safe harbor shields statements "which are later shown to have been inaccurate"). The statements that CardiAQ's claims were "without merit" or "baseless" fit this definition, because they were predictions about the future outcome of the pending litigation, and could only be invalidated by reference to the ultimate outcome of the case. In the run of events, these statements turned out to be only partially correct; Neovasc prevailed on some claims, but it lost on others.[1]

Of equal significance, Neovasc's SEC filings included detailed and specific warnings about the possibility and the consequences of losing the CardiAQ litigation. Neovasc's January 26, 2015, prospectus supplement[2] for its share offering stated:

---

[1] Grobler does not contend that these statements fall outside the statutory definition of "forward-looking statement" provided in the safe harbor, *see* 15 U.S.C. § 78u-5(i)(1), but only that the statements were not forward-looking in essence, as discussed *infra*.

[2] In ruling on the motion to dismiss, the court may consider "documents the authenticity of which are not disputed by the parties . . . official public records . . . documents central to plaintiffs' claim . . . [and] documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Neither party contests the authenticity of the documents referenced in this opinion, all of which are referred to in the Complaint.

It is possible that as a result of future litigation our products currently marketed or under development may be found to infringe or otherwise violate third party intellectual property rights.  A former customer has alleged that we have wrongfully used its confidential information in connection with the Tiara technology.  While we believe this allegation to be without merit, the ultimate outcome of a litigation depends on numerous factors and our success in the event of any such litigation is not guaranteed.  Intellectual property litigation proceedings, if instituted against us, could result in substantial costs, inability to market our products including the Tiara product, loss of our proprietary rights and diversion of our management's and technical team's attention and resources.

Defs.' Ex. 1 at 8.  The prospectus supplement similarly stated that:

***The Company is subject to lawsuits that could divert its resources and result in the payment of significant damages and other remedies.***

The Company is engaged as a defendant in lawsuits filed by CardiAQ Valve Technologies, Inc. ("**CardiAQ**"), as further described below. Litigation resulting from CardiAQ's claims could be costly and time-consuming and could divert the attention of management and key personnel from our business operations.  We cannot assure that we will succeed in defending any of these claims and that judgments will not be entered against us with respect to the litigation resulting from such claims.  If we are unsuccessful in our defense of these claims or unable to settle the claims in a manner satisfactory to us, we may be faced with significant monetary damages, loss of intellectual property rights, or injunctive relief against us that could have a material adverse effect on our business and financial condition.

. . .

The outcome of these matters is not currently determinable nor is it possible to accurately predict the outcome or quantum of these proceedings to the Company at this time.  Until this matter has been resolved by the appropriate Courts, the Company cannot give any assurances as to such outcome.

*Id.* at S-9 to S-10.  One or both of these statements appeared in identical or near-identical form in numerous filings during the class period.[3]

Grobler suggests that these statements are generic warnings rather than the "meaningful cautionary statements" required by law.  For support, he points to *Rosenbaum Capital LLC v. Boston Communications Group, Inc.*, 445 F. Supp. 2d 170 (D. Mass. 2006).  In *Rosenbaum*, the defendant company had been found to have willfully infringed a competitor's patent despite repeated assurances to investors that its product did not infringe and that it had "meritorious defenses."  *Id.* at 172-173.  The *Rosenbaum* court determined that the company's warning about the outcome of the litigation smacked too much of boilerplate to deserve safe harbor protection.  *Id.* at 176-177.  The warning in that case, however, was far less replete than the one offered by Neovasc; it merely stated that Boston Communications "[f]rom time to time" faced lawsuits and could "give no assurance" that it would necessarily prevail in them, while its pronouncements about the case then

---

[3] To be specific, the paragraph describing the CardiAQ allegations as "without merit" also appeared in the January 28, 2015, prospectus supplement, the 2014 annual information form issued on March 30, 2015, and the 2015 annual information form issued on March 29, 2016.  The second quotation emphasizing the risks from the CardiAQ litigation appeared in all of these filings as well as in the discussion and analysis filings covering the 2013-2014 and 2014-2015 fiscal years.  Defs.' Ex. 2 at 8, S-9 to S-10; Ex. 3 at 20, 21; Ex. 4 at 14; Ex. 5 at 16-18; and Ex. 6 at 15.

pending raised no warnings about the potential of a loss as a counterbalance to its confident assurances.  *Id.* at 176.  Here, by contrast, specific and repeated warnings were given about a potentially significant loss in the very litigation at issue.  These detailed statements, anchored as they were to the CardiAQ litigation, easily satisfied the statutory requirement for "meaningful cautionary statements."

Grobler, however, disputes the availability of the safe harbor in two additional, although related, ways.  First, he argues that even if defendants have shown that the forward-looking statements were made with adequate cautionary language, they cannot satisfy the second of the safe harbor tests.  According to Grobler, this second aspect precludes reliance on forward-looking statements protection where a plaintiff proves that they were made "with actual knowledge . . . that the statement[s] w[ere] false or misleading." 15 U.S.C. § 78u-5(c)(1)(B).  Grobler maintains that he has pled facts sufficient to demonstrate actual knowledge, and therefore, the safe harbor provides defendants no refuge.

This argument is based on a misreading of the statute.  A careful examination of the text demonstrates that the safe harbor provisions are written disjunctively, and as a result, "the plaintiff's inability to show knowledge of falsity is only relevant if the defendant is unable to produce

meaningful cautionary statements or evidence of immateriality." *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 795 (11th Cir. 2010); *accord OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 502-503 (3d Cir. 2016); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112-1113 (9th Cir. 2010); *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 672 (6th Cir. 2003); *see also Stone & Webster*, 414 F.3d at 212 (noting that "the maker of knowingly false and wilfully fraudulent forward-looking statements, designed to deceive investors, escapes liability for the fraud" if the statements are forward-looking and have meaningful cautionary language). Stated in the converse, proof of known falsity is governing only where meaningful cautionary statements are lacking.

Grobler's second contention is that his Complaint targets not the forward-looking aspects of defendants' statements, but their embedded assertions of present fact — specifically, that defendants purported to actually believe that the allegations in the CardiAQ lawsuit were "without merit." This could not be true, Grobler contends, because defendants must have known at the time they made the statements that Neovasc would be found liable on at least some of CardiAQ's claims. For support, Grobler points out that the First Circuit has said, albeit in a different context, that "a statement of opinion may be considered factual in at least two respects: as a

statement that the speaker actually holds the opinion expressed and as a statement about the subject matter underlying the opinion." *In re Credit Suisse First Boston Corp.*, 431 F.3d 36, 47 (1st Cir. 2005), *overruled on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *accord Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 774-775 (1st Cir. 2011). Consequently, "[a]n opinion may still be misleading if it does not represent the actual belief of the person expressing the opinion." *Plumbers' Union*, 632 F.3d at 775.

Neither *Credit Suisse* nor *Plumbers' Union* addressed claims that statements were "forward-looking," and a moment's reflection on the structure of the safe harbor provision explains why this holding cannot be imported into the safe harbor context. Virtually every statement about a future event could be said to imply a statement of present belief. Yet examining an alleged present belief apart from the forward-looking aspects of the statement requires an inquiry into the state of mind of the defendant — something that the first prong of the safe harbor provision is written to ignore. *See, e.g., Edward J. Goodman Life Income Trust*, 594 F.3d at 795 ("So long as the language accompanying the projections is meaningfully cautionary, the law requires us to be unconcerned with the speaker's state of mind at the time he makes the projections."); *see also OFI Asset Mgmt.*, 834

F.3d at 502-503 (collecting cases).   Treating all such projections as containing an implicit statement of present fact — that the speaker actually holds the opinion expressed — would render meaningless the protections of 15 U.S.C. § 78u-5(c)(1)(A).

The same reasoning leads to the conclusion that defendant Marko's statements made during the earnings call are protected by the safe harbor. The PSLRA immunizes oral forward-looking statements so long as they are "accompanied by an oral statement that additional information concerning factors that could cause actual results to materially differ from those in the forward-looking statement is contained in a readily available written document, or portion thereof," and identifies the relevant document containing the meaningful cautionary language.   15 U.S.C. § 78u-5(c)(2)(B). The oral statements need not be repetitively hedged by cautionary language: courts have routinely considered a warning at the beginning of an investor call to be sufficient to satisfy the safe harbor requirements.  *See, e.g.*, *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1132-1133 (9th Cir. 2004); *In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1170-1171 (N.D. Ill. 2004); *In re Parametric Tech. Corp. Sec. Litig.*, 300 F. Supp. 2d 206, 219-220 (D. Mass. 2001).  Here, there is

indisputable evidence that a meaningful warning was given at the outset of the earnings call.[4]

The final arrow in Grobler's quiver takes aim at another set of statements that he alleges were materially misleading. Grobler claims that in press releases and regulatory filings "[d]efendants falsely attributed Neovasc's financial success and future growth prospects to improperly-obtained technology." Opp'n at 13. This allegation is nigh-impossible to evaluate given Grobler's failure to identify the misleading statements he has in mind with any particularity; instead, he block-quotes long portions of the materials in his Complaint. His opposition also provides little by way of guidance; he asserts only that every one of Neovasc's public announcements about the development of the Tiara device that did not affirmatively admit that it incorporated stolen trade secrets was ipso facto materially misleading. Grobler relies on cases stating that "liability can arise when defendants know that statements putting the source of the company's revenue at issue are false

---

[4] At the beginning of the call, participants heard the following: "I would like to remind everyone that today's discussion may contain forward-looking statements that reflect current views with respect to future events. Any such statements are subject to risk and uncertainties that could cause actual results to differ materially from those projected in the forward-looking statements. For more information on Neovasc's risks and uncertainties related to these forward-looking statements, please refer to the Company's Canadian and US filings, which are available on SEDAR and EDGAR." Defs.' Ex. 17 at 3.

or misleading." *Steiner v. MedQuist Inc.*, No. 04-5487 (JBS), 2006 WL 2827740, at *15 (D.N.J. Sept. 29, 2006).

Whatever the general merits of this theory, it fails in this case because the press releases and regulatory filings on which Grobler relies are no less protected by the safe harbor. The press releases uniformly contained warnings about forward-looking statements and specifically referred to the company's public filings. *See, e.g.*, Defs.' Ex. 10 at 6-7. Such incorporation by reference is permissible. *See, e.g.*, *Miller*, 346 F.3d at 677; *Midway Games*, 332 F. Supp. 2d at 1167. Unlike statements of current revenue (like those in *Steiner* and similar cases), statements about future earnings potential or the development of a product are precisely those that the safe harbor is designed to protect. Neovasc's filings both frankly acknowledged the uncertain long-term prospects of the Tiara device and explicitly referred to the pending CardiAQ suit. In the prospectus supplement, for example, investors were told that the Tiara was not currently revenue-generating, and were warned that "[t]here is no certainty that the Tiara device will successfully proceed through clinical testing and ultimately receive regulatory approval." Defs.' Ex. 1 at 3. Neovasc also stated that an adverse outcome in the CardiAQ litigation could cost the company substantial sums

and lead to an "inability to market our products including the Tiara product." *Id.* at 8.  The PSLRA requires no more.

There is one final issue.  A claim under section 20 of the Act is derivative of claims under Rule 10b-5.  Because Grobler fails to make out a viable claim under the Rule, his section 20 claim necessarily fails.  *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 67-68 (1st Cir. 2008).

### ORDER

For the foregoing reasons, defendants' motion to dismiss is <u>ALLOWED</u>.  The clerk will enter the dismissal and close the case.[5]

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

[5] Grobler makes a passing request for leave to amend in a footnote to his opposition, Opp'n at 20 n.17, a request repeated at oral argument.  No formal motion to amend was ever made, however, and such piecemeal and informal requests are disfavored.  *See Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015).  Nonetheless, an amendment would be futile — no additional allegations would alter the fact that the statements, taken on their own terms, are protected by the safe harbor.